## CROSS vs. UPSON.

Where a person, other than the lessee, enters upon and occupies leased premises, or pays the rent, the law infers an assignment to him of the lease.

But this presumption may, in either case, be rebutted by proof that there never was in fact such an assignment.

Action for rent on a lease of a storeroom. It appeared that the lease was for five years from May 1, 1857; that by its conditions the lessee could not, without forfeiture, assign or underlet except upon the written consent of the lessor, which was never given; that the defendant bought the lessee's stock of goods and occupied the premises from December, 1857, and paid the lessor the rent named in the lease for two quarters; that he then agreed with the lessor for the use of the premises for one year at a reduced rate; that at the expiration of that year the lessor demanded the rent named in the lease for the rest of the term; that the parties disagreed, and the defendant, after occupying the premises six months longer, left them. The defendant introduced evidence tending to show that there was no assignment in fact. *Held*, that it was error for the court to instruct the jury that the agreement as to rent for one year at a rate less than that called for by the deed, "did not amount to a new lease, but was merely an

agreement to reduce the rent for one year on the existing lease; that upon the statement of all the parties it only had the effect to temporarily diminish the rent; and that after that year all the provisions of the lease would be in force.''

The question whether the defendant, at the time of such agreement, was in under the lease, should have been submitted to the jury upon the inference raised by the law in favor of an assignment and upon the *opposing evidence*, and not upon that inference alone, as though it were conclusive.

Upon the facts put in evidence by the defendant, he became an under-tenant at will of the lessee; but as to the lessor, before the reletting at a diminished rent, he might, by virtue of the covenant against underleasing, with the condition for a forfeiture, have been regarded as a *quasi* tenant by sufferance.

APPEAL from the Circuit Court for *Milwaukee* County.

This action was for rent alleged to be due from the defendant upon a lease of a storeroom in Milwaukee to Wm. Strickland, for five years from May 1, 1857, which lease, the complaint alleges, was assigned by Strickland to the defendant on the 22d of December, 1857. The facts are stated in the opinion of the court. The indorsement upon the lease, there referred to, was made in April, 1858, and was in these words: "In consideration of one dollar, I hereby agree to take $2,000 for one year only from this date, payable in the manner within specified;—after the expiration of said year the rent to be the same as within expressed. J. B. CROSS." There was also another indorsement as follows: "Received on this lease a note for $500 for rent up to August 1, 1858. J. B. CROSS."

The jury found a verdict for the plaintiff for $1,928.38 damages. Judgment accordingly; from which the defendant appealed.

*J. B. D. Coggswell*, for appellant.

*Mariner & Waldo*, for respondent:

It was proper for the court to instruct the jury that the *indorsement made by the plaintiff on the lease* did not amount to a new lease; that it was merely an agreement to reduce the rent for one year on the existing lease; that upon the statements of all the parties *it* only had the effect to temporarily diminish the

rent. Whether there was an assignment or not was fairly left to the jury.

*By the Court,* DIXON, C. J. The complaint charges an assignment of the lease to the defendant; the answer denies it; and this is the only point in controversy. In support of the complaint, it is shown that the defendant bought Strickland's stock of goods, and succeeded him in the possession of the demised premises, on the 22d day of December, 1857, and continued therein until about the first day of November, 1859; and that he paid the plaintiff one—perhaps two—quarters' rent according to the terms of the lease; the last being for the quarter ending April 30, 1858. On the other side, it is shown that there was no assignment in fact; that at the time of purchasing the goods, the defendant did not buy the lease; and that it never was in his possession, but was retained by Strickland. These facts appear by the testimony of the defendant and Strickland, provided the jury should credit their statement. It is also shown that, before the first of May, 1858, the defendant agreed with the plaintiff for the use of the premises for one year from that date at a reduced rent of $2000 per annum, (that fixed by the lease being $3000,) payable quarterly in advance, which was paid; and that in the spring of 1859, he asked a still further reduction for the ensuing year, and failing to agree with the plaintiff, who demanded the rent fixed by the lease, he occupied until about the first of November as above stated, without payment of rent, and then abandoned the premises, having given notice thereof, and delivered the key to the plaintiff. Upon the defendant's refusal to pay the rent as provided in the lease, the plaintiff brought suits against Strickland, averring that he was still in possession, and recovered judgments for the quarters ending respectively on the last days of August and November, 1859. The lease, which was of a store in the city of Milwaukee, was for a term of five years from the 1st day of May, 1857. One of its condi-

tions·was, that Strickland was not to assign, relet or under-lease, &c., without the written consent of the plaintiff. The plaintiff testifies that he has no knowledge of an assignment, and that he never gave his assent thereto. Such is a brief outline of the facts, which seems necessary in considering the instructions of the judge to the jury.

The instructions, such part of them as we feel called upon to notice, and which are properly brought to our attention by exceptions, are as follows: "This is an action to recover rent upon a lease made by the plaintiff to Strickland, who entered and occupied till December 22, 1857, as lessee, and on that day sold out to *Upson* and put him in possession of the goods and the store which contained them. *Upson* remained in the store, doing business in the old firm name, and paid the rent called for by the lease to the plaintiff, till May 1, 1858. He then made an agreement by which he was to pay at a different rate. If he went in as assignee, he was bound to pay according to the lease, just as Strickland was, so long as he remained. There is no assignment in form proved; but from the fact that he entered and occupied, an assignment may be inferred; on the other hand, it is urged that Strickland and *Upson* both deny that there was an assignment. I hold that the assignment may be proved by facts and circumstances. There is no difficulty till May, 1858, when a reduction was made, and it is claimed that *Cross* then gave a new verbal lease to *Upson*. *Cross* says that he not only reduced the rent for one year, but provided that after that it should be at the rate specified in the lease. This memorandum on the lease is not an arrangement which binds the defendant, but only throws light on the oral agreement. I instruct you that this does not amount to a new lease; it was merely an agreement to reduce the rent for one year on the existing lease. Upon the statement of all the parties, it only has the effect to temporarily diminish the rent. If such was the agreement then, after that year, all the provisions of the lease will be in force; that is, if you believe the

statements of the witnesses.    After that, if *Upson* remained in, he is bound to pay rent under the old lease, unless the plaintiff is estopped to demand the rent by his suits against Strickland," &c.

We think these instructions erroneous, because the direct evidence that there was in fact no assignment was not left to the consideration of the jury.  If the defendant and Strickland are to be believed, the lease was not assigned, nor was it in-tended to be, and yet their testimony is virtually excluded. The jury were instructed as if it were not in the case.   In-stead of submitting the question to the jury upon the inference raised by law in favor of an assignment from possession and payment of rent by the defendant and upon the opposing evi-dence, the judge gave it to them upon the inference alone, and that not as a mere inference liable to be overcome by direct proof to the contrary, but as in its nature conclusive of the fact. They were told that no assignment in form was proved, but that it might be inferred from the fact that the defendant entered and occupied, though it was urged that the defendant and Strickland both denied it.    " I hold that the assignment may be proved by facts and circumstances.   There is no diffi-culty till May, 1858," &c.    It seems to us that the jury must have looked upon this as equivalent to a direction in terms to disregard the testimony of Strickland and the defendant—that it was of no weight in opposition to the fact that the defendant had entered and occupied.    And then they were told that the agreement for a reduced rent for one year from May 1st, 1858, did not amount to a new lease, but was merely a reduction of rent upon the old one for one year, and that thereafter, if the defendant continued to occupy, he was bound to pay rent ac-cording to the old lease.    This was assuming the whole ques-tion in controversy, and which the jury were to decide.    For whether the agreement was a new lease or a reduction of rent upon the old one for a year, depended, so far as the defendant was concerned, upon whether he entered as assignee.    If as

assignee, it was a reduction of the rent; but if not, then it was, as to him, a new lease. To say, therefore, that it was a reduction of rent under the lease to Strickland, was to say that the defendant was assignee of that lease, and to preclude all investigation of that question.

There can be no doubt of the correctness of the proposition stated in the charge, that the law infers an assignment from the fact of entry and occupation. A like presumption arises from payment of rent. But in either case it is only a presumption —*prima facie* evidence merely—and liable to be rebutted by proof that the person charged as assignee never in fact had an assignment of the lease. This may be done, not only by showing an under-tenancy, which is the relation ordinarily established between the lessee and the party in possession by proof that there was no assignment, but by showing other facts disproving an entry as assignee. *Quackenboss vs. Clarke*, 12 Wend., 555. It may be by showing that the lease had expired before possession was taken, as was done in *Williams vs. Woodward*, 2 Wend., 487. And I have no doubt the presumption could be effectually repelled by proof that the supposed assignee entered against the will of the lessee, as for instance, that he took unlawful or forcible possession. If he enters with the lessee's assent, but without assignment, the result must be an under-tenancy of some kind, for years, from year to year, at will or by sufferance. In this case, if, as deposed by the defendant and Strickland, the defendant entered without an assignment of the lease, and without any agreement as to the time of holding or the rate and times of payment of the rent, he was what may properly be called an under-tenant at will to Strickland; though as to the plaintiff, before the reletting at the diminished rent, he might, by reason of the covenant against underleasing without consent in writing, and of the condition for forfeiture in case of violation, have been regarded as a *quasi* tenant at sufferance. Taylor's Landlord and Tenant, § 65.

For these reasons the judgment must be reversed; and as it

seems to us so probable that they will be found decisive of the action upon a new trial, we deem it unnecessary to enter upon the other points discussed by counsel.

Judgment reversed, and a new trial awarded.